UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Case No. 22-21379-CIV-JLK

BRANDON WEBB,

      Plaintiff,

v.

1300 SOUTH MIAMI EMPLOYER, LLC.

DBA SLS BRICKELL HOTEL & RESIDENCES,

      Defendant.

_____/

## SECOND AMENDED COMPLAINT

Plaintiff, BRANDON WEBB ("Plaintiff"), by and through the undersigned counsel, and hereby files this his Second Amended Complaint against Defendant, 1300 SOUTH MIAMI EMPLOYER, LLC dba SLA BRICKELL HOTEL & RESIDENCES ("Defendant") and in support states as follows:

## GENERAL ALLEGATIONS

1.  This is an action by the Plaintiff for damages exceeding $30,000, excluding attorney fees or costs, pursuant to 42 USC § 1981 ("1981"), and the Florida Civil Rights Act of 1992, Florida Statutes, Chapter 760, *et seq*. ("FCRA") to redress injuries resulting from Defendants unlawful, discriminatory treatment of Plaintiff.

2.  Plaintiff is a covered individual under the FCRA, and 1981.

3.  Defendant is authorized to conduct business in Miami-Dade County, Florida, and at all times material hereto was and is engaged in interstate commerce.

4.  Defendants were employers within the meaning of State and Federal employment laws.

5.  The violations complained of herein occurred in Miami-Dade County, Florida and as such, venue is proper in this Court.

Case No. 22-21379-CIV-JLK

6.  On or about June 3, 2021, Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"), charge no. 510-2021-04417 for race discrimination and retaliation.

7.  On July 8, 2021, the EEOC issued a Notice of Right to Sue on from 131-B signed by Marissa Cosculluela on behalf of Paul Valenti, District Director. This document was copied to Fabiana Ferrero, HR Director at SBE Holdings – SLS Brickell, 1300 S. Miami Ave, Miami, Fl 33130.

8.  All conditions precedent for the filing of this action before this Court has been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

9.  Plaintiff is a Black male.

10. Plaintiff started working for Defendants as a dishwasher on or about February of 2020.

11. Plaintiff was subsequently switched to security guard in October of 2020.

12. Throughout his employment, Plaintiff worked an average of forty hours each week for which the Defendants paid $14.42 per hour.

13. Plaintiff was falsely accused of stealing by a Latino chef named Victor Rosado and as a result was transferred to security. Victor also called Plaintiff a thief. Victor also allowed other non-black employees to eat restaurant food but he would not allow Plaintiff to eat restaurant food.

14. The hotel manager, Said Hykaal, a white employee of Defendant has been harassing Plaintiff due to race and color and making statements towards plaintiff calling him "Loud" and "Ghetto." This was also confirmed by Carlos Aventura, the front desk manager.

Case No. 22-21379-CIV-JLK

15. Said Hykaal would also stare at Plaintiff for long periods of time over a course of two months. This behavior was directed only at Plaintiff and not towards the non-black employees.

16. Co-worker, Michael Barsamian, behaved in an aggressive and disrespectful manner over the radio for months on end. When Plaintiff discussed Said's discriminatory behavior with Michael, Plaintiff was informed that Said was bigoted against blacks. Michael made reference to multiple front employees that complained about Said's bigoted and racist comments including Asha Allen, former employee.

17. Another worker in the building Miguel also made discriminatory remarks to or in front of Plaintiff such as: "blacks deserve what they get because they are 'less than other races'" and also "I rather be on top than on the bottom" referring to Plaintiff's race as inferior.

18. Plaintiff complained to the hotel Assistant manager Said Hykaal as well as human resources, Fabiana Ferro and the harassment and comments were denied by Said though he continued to behave inappropriately as describe above. This was in part because Said and Fabianna were in a relationship.

19. Plaintiff's direct supervisor Ronald Hodgson was informed of the harassment and chose to ignore the Plaintiff while refusing to file a report or take action. Ronald confirmed Michael's comments and informed plaintiff that the situation was as is and could not be changed.

20. Ronald Hodgson, Plaintiff's supervisor, expressed displeasure and reprimanded Plaintiff for going over his head and reporting to HR. Ronald began to retaliate against plaintiff by telling lies to management such as that Plaintiff was not patrolling and hiding out while not doing his job. He would engage in the additional retaliation of filing false write-ups about Plaintiff with human resources.

21. Plaintiff was also subjected to a hostile work environment as Ronald began to join in with Michael in verbally yelling at Plaintiff over the radio system. These unnecessary reprimands

were aggressive, anxiety provoking and overheard by the public and other hotel employees. The reprimands were uncalled for and done on a repeatedly frequent basis for the purposes of harassing Plaintiff.

22. The continued mistreatment resulted in Plaintiff seeking medical treatment for this harassment.

23. Subsequent to the filing of Plaintiff's complain with Human Resources, harassment changed form into improper write-ups and directed procedural emails. Improper write-ups included but were not valid included the mask write-ups. Plaintiff was written up for not wearing a mask when he did in fact have a mask on as requested by management. Other employees were not written up though they were in fact witnessed not wearing masks. See write up dated December 17, 2020 and a below average review dated March 9, 2021 attached as Composite Exhibit "A".

24. On September 8, 2021 Plaintiff had a meeting with Human Resources Adrianna Santana and Patty Paredes. Michael was present. Plaintiff complained that Michael was harassing him, yelling at him and using the F word repeatedly in communications with plaintiff. Plaintiff was told that he was too sensitive and needed to learn to communicate better. Michael was not reprimanded at this meeting or asked not to treat Plaintiff in appropriately.

25. Despite Plaintiff's continued employment with Defendant, advancement or promotion opportunities are not available to Plaintiff due to these discriminatory practices.

26. Plaintiff's multiple complaints were dismissed and regarded as mere miscommunications. See multiple emails attached hereto as Exhibit "B".

27. Non-black employees were treated better, not referred to using racist terms and were not targeted as Black employees were so treated.

28. Any reason proffered by Defendants for the adverse employment action is mere pretext

Case No. 22-21379-CIV-JLK

for unlawful discrimination and retaliation.

## COUNT I
### Race and Color Discrimination in Violation
### of the FCRA against Defendant

Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-28 above as if set out in full herein.

29. Plaintiff is a member of a protected class under the FCRA.

30. By the conduct describe above, Defendants have engaged in discrimination against Plaintiff because of Plaintiff's race and color and subjected the Plaintiff to race and color-based animosity.

31. Such discrimination was based upon the Plaintiff's race and color in that Plaintiff would not have been the object of discrimination but for the fact that Plaintiff is not black.

32. Defendants' conduct complained of herein was willful and in disregard of Plaintiff's protected rights. Defendants and its supervisory personnel were aware that discrimination on the basis of Plaintiff's race and color was unlawful but acted in reckless disregard of the law.

33. At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendants.

34. Defendants retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

35. As a result of Defendants' actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

36. The conduct of Defendants, by and through the conduct of its agents, employees, and/or

representatives, and the Defendants' failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under state and/or federal law.

37. The actions of the Defendants and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights.

38. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendants' discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE,** Plaintiff respectfully prays for the following relief against Defendants:

A.  Adjudge and decree that Defendants have violated the FCRA, and have done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.  Enter a judgment requiring that Defendants pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

C.  Enter an award against Defendants and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

D.  Require Defendants to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendants, or in lieu of reinstatement, award front pay;

E.  Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

F.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

Case No. 22-21379-CIV-JLK

## COUNT II
### *Race and Color Discrimination in Violation of 42 U.S.C. § 1981*

Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-28 of this complaint as if set out in full herein.

39. Plaintiff is a member of a protected class under § 1981.

40. By the conduct describe above, Defendant has engaged in discrimination against Plaintiff because of Plaintiff's race and subjected the Plaintiff to race-based animosity.

41. Such discrimination was based upon the Plaintiff's race in that Plaintiff would not have been the object of discrimination but for the fact that Plaintiff is Black.

42. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that discrimination on the basis of race was unlawful but acted in reckless disregard of the law.

43. At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

44. Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

45. As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

46. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights

Case No. 22-21379-CIV-JLK

under federal law.

47. The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

48. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

49. So that Plaintiff's rights may be protected, Plaintiff has retained the undersigned counsel who is entitled to attorney's fees pursuant to 42 U.S.C. § 1988, the Civil Rights Attorneys Fee Award Act.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant: Adjudge and decree that Defendant has violated 42 U.S.C. § 1981, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

A. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

B. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

C. Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

D. Award Plaintiff the costs of this action, together with a reasonable attorney fees; and

E. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT III
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

Plaintiff BRANDON WEBB re-adopts each and every factual allegation as stated in paragraphs 1-28 above as if set out in full herein.

50. Defendant is an employer as that term is used under the applicable statute referenced above.

51. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting his rights under the FCRA.

52. Plaintiff, as a black African-American, is within a protected class as envisioned by the FCRA.

53. Defendant is liable for this conduct, either vicariously or directly, where Plaintiff complained to management and ownership about the harassment and abuse and no remedial or disciplinary action was undertaken.

54. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, loss of capacity for the enjoyment of life, and other tangible and intangible damages.

55. These continuing damages are continuing and are permanent.

**WHEREFORE,** Plaintiffs respectfully prays for the following relief against Defendants:

A. Adjudge and decree that Defendants have violated the Florida Civil Rights Act;

B. Award Plaintiff compensatory damages for emotional distress, embarrassment and

Case No. 22-21379-CIV-JLK

humiliation;

C. Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practices which discriminates;

D. For a money judgment representing pre-judgment interest;

E. Award any other compensation allowed by law including punitive damages and attorney's fees;

F. Grant Plaintiff's costs for this action, including reasonable attorney's fees;

G. Grant Plaintiff a trial by jury; and

H. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

Dated: July 18, 2022

Respectfully submitted,

/s/Mercy B. Pina-Brito
REMER & GEORGES-PIERRE, PLLC
Jason S. Remer, Esq.
Florida Bar No. 0165580
jremer@rgpattorneys.com
Mercy B. Pina-Brito, Esq.
Florida Bar No. 0135161
mpb@rgpattorneys.com
Courthouse Tower
 44 West Flagler Street,
Suite 2200 Miami, FL 33130
Tel: (305) 416-5000
Fax: (305) 416-5005
Attorneys for Plaintiff

Case No. 22-21379-CIV-JLK

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 18, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing. By:

/s/Mercy B. Pina-Brito
Mercy B. Pina-Brito, Esq.
Florida Bar No. 0135161

## SERVICE LIST

JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard Miami, Florida 33131
Telephone: (305) 577-7600
Pedro J. Torres-Díaz, Esq.
Florida Bar No.: 19327
E-mail: pedro.torres-diaz@jacksonlewis.com
Brandon U. Campbell, Esq.
Florida Bar No. 0112853
E-mail: brandon.campbell@jacksonlewis.com
Counsel for Defendant



# COMMUNICATION NOTICE

| Team Member's Name: Brandon Webb | Team Member's Title: | Security Officer |
|---|---|---|
| Manager/Director:  Mark Napoli | Team Member's Dept: | Security |

**Discipline Information (attach any and all relevant back-up documentation if applicable)**

Incident Date:  12-17-20                                         Presentation Date:  12-18-20

Discipline Type:  Verbal Warning            Discipline Reason:  POLICY - Violation of Work Rules

*If other, specify reason here:

**Description of Incident:**

Management noticed staff member from Security, Brandon Webb walking through public areas with his facemask/Covering under his chin. This is in violation of our SOP-55, which states; "All team members, regardless of position, will wear a protective mask and gloves when having contact with other team members and the general public. These masks and gloves must be worn while on shift and changed at the frequency rates as defined by the CDC. The mask or gloves are not to be set down in common areas. Even when wearing the personal protective equipment (PPE) social distancing with a minimum of six feet distance must always be practiced between individuals when possible. "

**Description of Corrective Action:**

Written documentation of conversation with the employee.  Conversation advising correction and action to correct issue.

I was by myself on the sidewalk. I thought that area was a safe zone. I was walking and it was a little difficult to breathe.

**History**

Relevant disciplinary documentation issued within the past 12 months?     Yes ☐  No ☑      If Yes: (fill-in fields below)

| Discipline Type: | Choose One: | Date: | Discipline Reason: Choose One: |
|---|---|---|---|
|  |  |  | *If other, specify reason here: |
| Discipline Type: | Choose One: | Date: | Discipline Reason: Choose One: |
|  |  |  | *If other, specify reason here: |
| Discipline Type: | Choose One: | Date: | Discipline Reason: Choose One: |
|  |  |  | *If other, specify reason here: |

# EXHIBIT A

# COMMUNICATION NOTICE

Team Member Comments:

---

**Notice to Team Member** - Additional infraction(s)/violation(s) of company policy or procedure will result in further disciplinary action, up to and including termination.

Signatures

Team Member (Print) _Branden Webb_

Team Member Signature _[signature]_                                      Date _12/18/20_

*Refusal to sign document does not make it invalid.*

Manager or Director (Print) _____

Manager or Director Signature _____            Date _____

*If applicable, additional signatures may be required as follows:*

Witness (Print) _____

Witness Signature _____                              Date _____

HR Representative (Print) _____

HR Representative Signature _____                Date _____

HR | March 1, 2019



## Team Member Performance Review

| | |
|---|---|
| Team Member Name Brandon Webb | Date of Hire 2/11/2020 |
| Job Title Security Officer | Manager Name Mark Napoli |
| Department Security | Review Date 3/9/2021 |
| Review Period ☐ 90 Day ☑ 6 Months ☐ 1 Year | Additional Review Period ☐ |

### Rating Breakdown (Choose appropriate rating for each skill listed, from drop down menu)

5 = Exceptional: Masters role by consistently exceeding performance expectations and adheres to policies and procedures.

4 = Exceeds: Demonstrates thorough knowledge of role without requiring much direction/supervision and adheres to policies and procedures.

3 = Meets Essential Role Functions: There are limited performance opportunities and adheres to policies and procedures.

2 = Improvement Required: Performance lacks consistency, needs constant reinforcement and needs to often be reminded of policies and procedures.

1 = Does not meet expectations: Will be placed on 30 days Performance Improvement Plan (PIP). Failure to successfully complete may lead up to disciplinary action up to and including separation of employment.

| Competency | Rating | Comments |
|---|---|---|
| **Job Knowledge:** Understands duties and responsibilities, has necessary job knowledge, has necessary technical skills, understands company mission/values, keeps job knowledge current, is in command of critical issues. | 2 | Within his 90 day period, Brandon was meeting expectations but we have since seen a disengagement in performance and communications. We are committing to presenting additional training to develop Brandon's confidence of the field. Most recently, Brandon was dispatched to a First Aid call on 04/03 but did not collect any guest information except for how the incident occurred. When his MOD attempted to follow up on how these incidents should be handled, Brandon stated he was busy with patrols and did not report to his MOD. We expect Brandon to be receptive to feedback that further supports his development and applying this feedback moving forward. Brandon has not been properly logging events into MS-Shift and there have been challenges with him responding to communications. We expect all items and events properly and thoroughly logged in MS Shift by no later than the end of the shift to ensure strong communication and follow up from the team. All team members are expected to respond to communications in a reasonable and timely manner both via email and radio. We expect for radio and email communications to improve immediately, along with thoroughly listing out the items on the MS Shift logs. |
| **Customer Focus:** Knowing the (internal and external) customer business needs and acting accordingly; anticipating customer needs, and giving high priority to customer satisfaction and customer service. | 3 | Brandon, during the few times he dealt with guest with issues that needed resolving, has communicated very well via email regarding the guest's concerns and what is needed to be done. He will also follow up with management to ensure it's acknowledged and completed. Brandon also went above and beyond by assisting a resident in carrying their items up to their unit after their mother had tripped and fell. However, we would like to see Brandon anticipate the guest needs more as when Brandon responded to a first aid call in the Lobby, no empathy or engagement was observed from leadership. |

| | | |
|---|---|---|
| **Quality Orientation:** Setting high standards regarding his/her work and working environment and acting accordingly; developing quality standards, continuously evaluating performance, products, and procedures; actively seeking ways to improve quality. Employee is eager to provide outstanding service, is self motivated and goes above and beyond. | 3 | Brandon is approachable and focused, although we expect for Brandon to showcase eagerness and initiaitve to go above and beyond for our internal and external guests. We expect to see stronger initiative when dealing with incidents at the time it arises, as opposed to waiting for direction. Most recently, on 04/03, Valet called for Security due to an accident between two vehicles. Brandon walked to Valet, although did not assist with the incident or collect any information. We expect immediate involvement from all Security Team Members Brandon has expressed interested in items such as the ADR and guest surveys and we are committed to involving Brandon with these items. |
| **Passion:** Enthusiasm, whole-hearted, "dive in head first" | 3 | Brandon is still familiarizing himself with the department standards and put forward his best effort daily. Some additional training and scenarios are needed for him to be fully comfortable handling incidents. He shows his eagerness to learn the field and shows that he cares to do the right thing in-line with the department standards. |
| **Teamwork:** Builds and develops relationships and networks with peers, managers and employees. Fosters open communication and engages people in the process. Considers the impact of personal/department's actions on others. Solicits and uses other employees' ideas and opinions to resolve issues. Creates an environment of positivity and is a problem solver. | 3 | sbe has the standard of "have fun, make friends." The Security team works collaboratively with one another. We would like to see Brandon engage more to foster a stronger working relationship with the team. Brandon is expected to assist the team when calls are given to him and to acknowledge the calls on the radio. On 03/28, Dispatch requested for a few venues to be locked for the evening but Brandon did not respond to the radio. The Security MOD discovered Brandon sitting in Receiving on two separate occasions that night and no patrols were logged into MS-Shift. We expect for Brandon to be a team player and assist on his shift. |
| **Attendance/Reliability:** Employee may be relied upon to be at work when scheduled to support the department and deliver outstanding guest services for both internal and external guests. | 2 | Brandon is always on time and is on property a few minutes before his shifts starts for when the time comes he is dressed and ready to start the shift he is currently working in. However, Brandon needs to check schedule adjustments, notices posted and his calendar as he was a no call no show for Frist Aid training and has accumulated attendance points at a written warning level. |
| | | *Attendance Points to Date: 6 |

| | |
|---|---|
| *Rating Average:* | 2.67 |

un & Make Friends - We've Got Your Back - Tell It Like It Is - Play To Win -Right Here Rig

**(Completed by Leader) Additional Comments/ Goals**

We will continue to train Brandon and present him with scenarios that he may encounter on property so he can be fully prepared to handle any incident that may arise. As Security, we expect for Brandon to be a role model to all team members. Therefore, he has continued to wear his mask after being addressed. Brandon currently has 6 attendance points and has committed to following the attendance expectations. Our expectations are for Brandon to work well with the team in a respectful environment. Additionally, we expect Brandon to be open and transparent with leadership.

**(Completed by Team Member) Additional Comments/  What support do you need to achieve your goals?**

Some of these incidents I am not familiar
with and can't say that I agree with
with the narrative, but I will work with
the team to improve.

By signing this form, you confirm that you have discussed this review in detail with your manager.

Team Member Print Name: Brandon Webb      Team Member Signature: _____ Date: 4/20/21

Manager Print Name: Merh Ucpali      Manager Signature: _____ Date: 04/20/2021

EC Print Name: Pedro Valentin      EC Signature: Pedro Valentin      Date: 4/20/21

From: Adriana Santana <adriana.santana@sbe.com>
Sent: Monday, August 30, 2021 1:17 PM
To: Brandon Webb <brandon.webb@sbe.com>
Subject: Recap from 8//13/2021 Interaction

Brandon,

Thank you for meeting with me and your Director of Security, Mark Napoli last Friday, August 20, 2021. I wanted to make sure I followed up on your concern regarding an encounter between you and your co-worker Mike on Friday, August 13, 2021, in which you stated you felt harassed.

On Friday 8/13, you sent me an email stating that Mike did not respond well after your supervisor Amos told you both to get along. You were asked for specifics and mentioned that Mike use foul language and said he is not a "mind reader". Additionally, you expressed feeling offended because the door to the office was locked when you arrived and felt this was done on purpose against you.

As a follow up, Mark, Director of Security, had a conversation with both Mike and Amos regarding this concern. Mike was asked about his interaction with you on the day of 8/13/2021. Mike advised that since you usually like to cover base first, and since you were not there at 2:00pm, he closed the door and went into the back office to speak with Amos. Shortly into the shift, Mike heard you say over the radio "Hotwire mezzanine" but no other communication was heard. Michael was then called to Base by Amos. Amos addressed both Michael and you regarding being able to communicate amongst each other. Michael advised that he did not curse nor did he speak much at all.

When speaking with Security Supervisor Amos Gedeon regarding his interactions on 08/13/2021, Amos stated he heard "hotwire mezzanine" over the radio twice but no names were mentioned nor were instructions given. Since, there were no names mentioned, no one responded to the call on the radio. You then called Amos to Base. Amos asked why you did not call Mike as he was near the area. You stated you did but Amos informed him you did not as no names were mentioned or requested over the radio. You turned to Amos and said "oh that's the game you're going to play." Amos then brought your and Michael together. He spoke to you about acting like adults. He commented that you both have experience so you can both lean on each other and use each other; he also added that all of you can achieve your goals by communicating. Amos confirmed that Michael did not curse at you during the conversation. You then informed Amos you had to go home as you did not feel good.

On 8/20/2021 you were asked to meet with me and your director of Security, Mark. During our conversation, you were asked to recap your interactions with Mike and Amos on the afternoon of 8/13/2021. You mentioned you came down at the beginning of the shift and went to base to find the door closed. You said both Mike and Amos went outside and quickly came back to base in which at the moment Amos asked for both, you and Mike to communicate better when working together. You said that Mike said "you know you always like to work in base first" and that he started getting heated. I asked you directly to please explain and provide information backing up your statement that this incident was about harassment or racial related, in which you answered that this time, this incident was not racial related.

Brandon, after completing a thorough investigation, it has been concluded there is no evidence of harassment or discrimination against you. This is an issue of miscommunication- which has been addressed by your supervisor. You were both asked to communicate better when working together.

Everyone has the responsibility in keeping an environment where we all respect and support each other. In keeping with this responsibility, all team members need to comply with our standards of conduct. Over the last few months, you have brought forth a couple of complaints which included serious allegations of harassment and discrimination. When asked for specific examples as to why you think these concerns are discriminatory in nature, you have been unable to provide details other than you believe you are treated a certain way because of your color. Every single one of your concerns has been investigated thoroughly and addressed promptly. We have not found evidence of discrimination or harassment in any instance but there has been no improvement.

Brandon, at this point and to better assist in solving your concerns, I am asking you for an in person meeting between you, Mike, and myself.

Please plan to meet with me and Mike on Wednesday, September 1st at 4:00pm.

Thank you for your cooperation in this matter as we all work together in moving forward and resolving this issue promptly.


Best,


Adriana.


EXHIBIT B

**From:** Brandon Webb <brandon.webb@sbe.com>
**Sent:** Wednesday, August 18, 2021 3:31 AM
**To:** Adriana Santana <adriana.santana@sbe.com>
**Subject:** Re: 8/13/21 Incident

Hello Adriana. This is Brandon. Michael cursed at me this last Friday 8/13/21. This has been happening for months. Also, there is a gentleman named Miguel who works in Condo who I speak to from time to time. Sometimes politics has been brought up. I try to not let it bother me, but he stated to me on multiple occasions that he was somewhat racist and embraced a racist ideology. I asked him why and he said that, "I'd rather be the one on top than on the bottom." I guess that is his right to feel that way, but when we speak, he speaks negatively about Black people. Stating how we get what we deserve because Blacks are less than other races. I tried to not let it bother me. But he laughs about it and walks away. This has happened multiple times. I realize that this is the Condo and not the Hotel but I still have to work with him and it's terrible to be spoken to that way.

Brandon

**From:** Adriana Santana <adriana.santana@sbe.com>
**Sent:** Monday, August 16, 2021 11:07 AM
**To:** Brandon Webb <brandon.webb@sbe.com>
**Subject:** RE: 8/13/21 Incident

Thank you Brandon. I will see you in my office hits  Friday at 1:00pm.

As far as your comment regarding Michael cursing, when did this happen?

Thank you.



**ADRIANA SANTANA**
Complex Director of Human Resources
SLS Brickell | SLS Lux Brickell | Hyde Midtown

1300 South Miami Avenue
Miami, FL 33130

T 305 239 1325

sbe.com



*Confidentiality Notice: This communication is confidential. If you have received it in error, please notify the sender by reply e-*
*mail and immediately delete it and any attachments without copying or further transmitting the same.*

**From:** Brandon Webb <brandon.webb@sbe.com>
**Sent:** Sunday, August 15, 2021 2:43 PM
**To:** Adriana Santana <adriana.santana@sbe.com>
**Subject:** Re: 8/13/21 Incident

Hello Adriana. I was waiting on you or Patty to touch base with me. I was on vacation when Patty sent that message originally. I have been available and coming to work. Anytime that's good for you could work for me. Michael has been harassing me for months and it still is going on now. Amos tried to have word with us both, but Michael started cursing saying, "I don't give a fuck" "I'm not a fucking mind reader". This has continued and only worsened. He was cursing at me in a threatening manner.  next Friday at 1:00pm before my shift should be fine.

Brandon

## SLS BRICKELL

**BRANDON WEBB**
Security Officer

SLS Brickell
1300 S Miami Avenue
Miami, FL 33130

T 305 239 1300


SLSHotels.com



*Confidentiality Notice: This communication is confidential. If you have received it in error, please notify the sender by reply e-mail and*
*immediately delete it and any attachments without copying or further transmitting the same.*

**From:** Adriana Santana <adriana.santana@sbe.com>
**Sent:** Friday, August 13, 2021 4:28 PM
**To:** Brandon Webb <brandon.webb@sbe.com>
**Subject:** RE: 8/13/21 Incident

Good afternoon Brandon,

Thank you for reaching out. In order for to better assist you, would you please help me with a couple of more details? I want to make sure I understand your situation better. You mentioned you showed up for work, was that this morning? You also mentioned you are always harassed. Would you please be specific as to what happened? When did this happen and what was said to you?

I sent you a message back on July 27 to schedule an in-person conversation in regards to your concerns. However, I have not heard back. It is my understanding that Patty Paredes has attempted twice to schedule an in-person conversation with you- prior to my arrival as well. However, we never heard back from you.

Brandon, as these are serious allegations, and in order for us to address your concerns, it is important that you provide us with specific details. Please let me know what time and day works best for you to meet next week.

Best,

Adriana.



**ADRIANA SANTANA**

Complex Director of Human Resources
SLS Brickell | SLS Lux Brickell | Hyde Midtown

1300 South Miami Avenue
Miami, FL 33130

T 305 239 1325

sbe.com



*Confidentiality Notice: This communication is confidential. If you have received it in error, please notify the sender by reply e-mail and immediately delete it and any attachments without copying or further transmitting the same.*

**From:** Brandon Webb <brandon.webb@sbe.com>
**Sent:** Friday, August 13, 2021 3:04 PM
**To:** Adriana Santana <adriana.santana@sbe.com>
**Subject:** 8/13/21 Incident

Hello Adriana. This is Brandon. I am emailing you now because when I showed up for work things got a little heated with Mike. Amos asked us to work and get along. Mike started saying he doesn't give a fuck and that he is not a mind reader. It seems like I can't come to work and just do my job. I am always harassed in some way shape or form. Amos tried to have a chat for the sake of us getting along while working but Mike did not respond well. I am having a health issue and need to step out for the day. I can't come and be harassed when I work because it's too much attacking going on. I have to step out for the day and will return to work tomorrow as scheduled.

Brandon

## SLS BRICKELL

**BRANDON WEBB**

Security Officer

SLS Brickell
1300 S Miami Avenue
Miami, FL 33130

T 305 239 1300

SLSHotels.com



*Confidentiality Notice: This communication is confidential. If you have received it in error, please notify the sender by reply e-mail and immediately delete it and any attachments without copying or further transmitting the same.*